**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

JUL 27 2018

FOR THE NINTH CIRCUIT

NORTHWEST BANK, AKA Northwest Savings Bank, a Pennsylvania state-charted savings association,

        Plaintiff-Appellant,

  v.

MCKEE FAMILY FARMS, LLC, an Oregon limited liability company; et al.,

        Defendants-Appellees.

No.   16-35879

D.C. No. 3:15-cv-01576-MO

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted May 11, 2018
Portland, Oregon

Before:  RAWLINSON and CHRISTEN, Circuit Judges, and BLOCK,[**] District Judge.

Northwest Bank ("Northwest") appeals the district court's judgment denying

its request for a declaration that it had a security interest in crops of radish and

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

ryegrass seed. We assume familiarity with the facts, procedural history, and issues presented. We affirm.

Northwest did not obtain a security interest in the seed crops because Cover Crop Solutions, Inc. ("CCS"), never acquired ownership of the crops. Northwest's theory of ownership is based on the license agreement between CCS and the owner of the radish variety, Blue Moon Farms, LLC ("Blue Moon"), and the production contracts between CCS and the growers.

The license agreement provides that the seed "shall be the property of CCS." The provision cannot, however, determine ownership as between CCS and the growers because the growers were not parties to that agreement.

When the security agreement between Northwest and CCS was executed, the seed crops were still in the ground. The written agreements between CCS and the radish seed growers state that "title to all stock seed, growing seed crops and seed produced hereunder shall be and remain in [CCS]," but those agreements were not signed until after the crop was harvested. The ryegrass contracts contain no similar provision; to the contrary, they "warrant[] that all seed shall be *delivered and sold* to Cover Crop Solutions free and clear of all encumbrances" (emphasis added). Thus, when the security agreement was executed, CCS had no ownership interest in the growing seed crops.

It is true that the security agreement included in its definition of collateral

"hereafter acquired or arising" interests, but the district court found that CCS never acquired the harvested crop, either directly or through an agent. That finding has not been challenged on appeal.

At best, CCS had a contractual right to the harvested seed crops. Even assuming that CCS's breach of its concomitant contractual obligation to pay for the crops did not terminate its right to the crops, *see* Or. Rev. Stat. § 72.7030 (authorizing seller of goods subject to repudiated contract to, *inter alia*, withhold delivery and resell goods), that right was subject to the provision of the license agreement in which CCS "hereby assign[ed] to [Blue Moon] all CCS's rights under all grower and production contracts." We agree with the district court that the provision's language unambiguously evidences an immediate assignment with a forbearance on its use, rather than a conditional assignment.

Our conclusion that Northwest did not acquire a security interest in the seed crops provides a sufficient basis on which to affirm the district court's judgment. We express no opinion as to whether Blue Moon or the growers owned the crops. And since Northwest did not have a security interest, we need not address the validity or relative priority of any competing liens on the crops.

AFFIRMED.